**UNITED STATES of America, Plaintiff,**

**v.**

**Michael S. MENZER, Defendant.**

**Case No. 92–Cr–232.**

United States District Court,
E.D. Wisconsin.

March 31, 1993.

Stephen Liccione, Asst. U.S. Atty., Milwaukee, WI, for plaintiff.

Dennis Coffey, Coffey, Coffey & Geraghty, Milwaukee, WI, for defendant.

## DECISION AND ORDER

TERENCE T. EVANS, Chief Judge.

The indictment in this case charged that Michael S. Menzer maliciously destroyed, by means of fire, the building housing the Onion River Mill and Art Gallery in Waldo, Wisconsin on September 17, 1990. The indictment further alleged that the fire resulted in the deaths of two children, Tyrone and Jason Menzer. The indictment cited that the arson was committed in violation of Title 18, United States Code, Sections 844(i) and 34.

Mr. Menzer has been found guilty by a jury. A presentence investigation has been ordered and Mr. Menzer's sentencing is scheduled to take place on June 1, 1993. The purpose of this order is to resolve two sentencing issues: (1) whether a sentence of life in prison is statutorily permissible in this case, and (2) what sentencing guideline should be applied pursuant to 2K1.4(c)(1).

The statutory penalty scheme in this case is unusual, awkward, and imprecise. The case law construing the penalty statutes, sections 844 and 34, and their relationship with each other is scant. The two statutes are reprinted here.

§ 844. Penalties

(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

§ 34. Penalty when death results

Whoever is convicted of any crime prohibited by this chapter, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct, or, in the case of a plea of guilty, or a plea of not guilty where the defendant has waived a trial by jury, if the court in its discretion shall so order.

Because the defendant's act of starting the fire which destroyed the mill obviously resulted in the deaths of the two little boys, the usual maximum arson penalties of 10 or 20 years are superseded by language in section 844 which allows the judge to impose as a penalty "imprisonment for any term of years." Section 34 provides that a convicted

arson defendant, when death occurs, "shall be subject also to the death penalty or to imprisonment for life, if the jury shall in its discretion so direct."

The statutory maximum penalty provided by the interplay of these two statutes is, therefore, either (1) any term of years, (2) life imprisonment, or (3) the death penalty.

■ Both the government and the defense agree that the death penalty provisions of section 34 are unconstitutional. *See Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Both sides also agree that "imprisonment for any term of years" is a statutorily available penalty in this case. The parties differ, however, on whether life imprisonment can be imposed.

■ Viewed from a practical standpoint, a penalty of "imprisonment for any term of years" could require that a defendant spend the rest of his life in prison. For a man of Mr. Menzer's age, a penalty of, say, 50 to 60 years without parole is probably the equivalent of a life sentence. But the question here has importance beyond the practical effect of the statutory maximum as the federal sentencing guidelines must also be taken into account in fashioning the penalty that is permissible in this case.

With the conceded invalidity of the death penalty provisions of section 34, the validity of the "imprisonment for life" alternative is suspect. Because the imposition of either penalty would require direction from the jury, the fact that the statute is silent on aggravating and mitigating factors that the jury may consider is fatal. Accordingly, I conclude that the statutory maximum penalty permissible in this case is "imprisonment for any term of years." Even though, in practical terms, it could be the same thing, a sentence of "life" is no longer permissible. In light of the rationale of *Furman v. Georgia*, Congress will have to revisit section 34 and fashion a penalty scheme that is constitutional. The surprising thing here is that Congress has not revisited the statute since *Furman* was decided some 21 years ago.

■ Next, I turn to the question of the applicable federal sentencing guideline that should govern this case. Arson is controlled by guideline 2K1.4 of the federal sentencing guidelines. Because death resulted, 2K1.4(c)(1) directs that I apply the "most analogous guideline" from the homicide chapter of part A relating to offenses against the person. The options are 2A1.1, first degree murder; 2A1.2, second degree murder; 2A1.3, voluntary manslaughter; and 2A1.4, involuntary manslaughter.

As I see it, the voluntary and involuntary manslaughter laws are inapplicable to this case. The choice is either first or second degree murder. First degree murder conjures up the usual notions of a clearly premeditated killing. Second degree murder, on the other hand, occurs when a life is lost due to conduct that is eminently dangerous to another and which, in the common law, evinces a depraved mind which acts recklessly and without regard to human life. While the question is a relatively close one in this case, it is my view, from the evidence presented, that Mr. Menzer's conduct is more analogous to second degree murder than first degree murder. That is not to say that one could not commit an arson that causes death which is closer to first degree murder than second degree murder. Had Mr. Menzer, for instance, come into the house and tied up his victims, making it impossible for them to escape the subsequent fire, the elements of first degree murder would clearly be satisfied. The evidence in this case is a bit short of that sort of premeditation. Many factors may have motivated Mr. Menzer to start the fire which destroyed the mill, and I think any one of a number of them could charitably be characterized as conduct evincing a depraved mind which acts regardless of human life. Accordingly, when Mr. Menzer is sentenced, I will rely on second degree murder as the most analogous crime in determining the sentencing range. This ruling does not preclude the government from arguing that this is an appropriate case for an upward departure under the guidelines thus determined.

SO ORDERED.